DANIEL F. FITTS, administrator, *vs.* FRANCIS MORSE.

A written agreement of children, among themselves, in the lifetime of their father, never known to or approved by him, that sums owing by some of them to him shall be treated as advancements in the settlement of his estate when he shall die, is not an acknowledgment of the debts as advancements within the Gen. Sts. *c.* 91, § 8.

APPEAL from a decree of the judge of probate allowing the first and final account of the administrator of the estate of Edmund Morse, late of Haverhill, deceased intestate. The reasons assigned for the appeal were, that the administrator rendered claims of the estate against James S. Frye, to the amount of $4030.43, as uncollectible, which should have been charged as an advancement against the distributive share of Harriet, wife of said James S., and daughter of the testator ; and also rendered claims of the estate against Edwin Morse, a son of the deceased, as uncollectible, which should have been charged as an advancement against the distributive share of the legal representatives of said Edwin.

At the hearing, before *Wells*, J., these facts appeared : Before 1861, Edmund Morse was placed under guardianship as an insane person, and so remained under guardianship until he died intestate in 1867 ; but he was often sane during the interval. On March 11, 1861, his children, namely, Francis, (the appellant,) Edwin and Harriet, together with Harriet's husband, signed an agreement, of which the following is the material part :

" Be it known that we, Edwin Morse, Harriet Frye and Fran cis Morse, children and heirs of Edmund Morse, and James S Frye, husband of said Harriet Frye, all of Haverhill in the county of Essex, have received of said Edmund Morse sums of money, and other property, differing in their several amounts as received by each of us. Now therefore, it is hereby mutually agreed between us, said parties, that, in the settlement of said Edmund Morse's estate, at his decease, we shall severally mutually receive such amounts as that, when the same is added to the several amounts we each may have received from said Edmund Morse in his lifetime, the whole of each of our several

amounts, when so added, shall be equal. Meaning and intending herein to agree to an equitable settlement of said estate, in reference to the fact that one of us said heirs may have received of said Edmund Morse, in his lifetime, more than another."

In his inventory of the estate of Edmund Morse, the administrator included as assets claims against James S. Frye to the said amount of $4030.43, all of which were for money paid to or for Frye by the intestate before he became insane, except one claim for about $200 lent to Frye by the guardian : and also included as assets claims against Edwin Morse to the amounts respectively of $1586.61 and $1121.58. There was no claim against Harriet Frye on the part of the intestate or of the guardian. In his account, the administrator credited himself and asked to be allowed for the $4030.43 and the $1586.61, as uncollectible.

It further appeared that James S. Frye "is insolvent, and claims against him are of no value;" that the claim of $1586.61 against Edwin Morse "was incurred previously to his discharge in insolvency, to which his father assented;" that the distributive share of Harriet Frye in the estate was larger than the claim included in the inventory against her husband ; and that Edwin Morse had died leaving three children as his heirs at law.

"There was no evidence that these were advancements, except the agreement of March 11, 1861, except as hereinafter stated. The appellant claimed that he could prove, if material, that the intestate, during some of his lucid intervals, declared to the guardian that it was his design and desire that any money paid to any of his children, or to said Frye, should be treated and regarded as advancements, and requested him to keep a strict account and to charge whatever said Frye received to said Harriet. He also offered to prove by the appellee, that, since the death of the intestate, Harriet had stated to him that she had understood that whatever her husband received should be charged to her, but subsequently stated that she had found out that that was not the proper construction of said agreement, and refused to allow such claims. The appellee disputed the competency of the declarations of the intestate and of Harriet, and did not admit that such declarations were made."

The judge reported the case for the determination of the full court, " if such declarations are competent, and material to the decision, then the case to stand for hearing; otherwise the decree to be affirmed, or reversed, or such decree to be made as the other facts may require."

*D. Peabody,* for the appellant.

*S. B. Ives, Jr.,* for the administrator.

Colt, J. The appellant claims that the administrator had no right to charge off the demands against Frye and Edwin Morse as uncollectible, because they should be treated as assets in his hands, to be charged against the distributive shares of Mrs. Frye, the daughter of the intestate, and of the children of his son Edwin, now deceased; that the amounts in dispute were in fact advancements made by the intestate in his lifetime to his children, and must be treated as such in the settlement of his estate.

There are three modes, under our statute, in which a gift or grant may be shown to have been intended as an advancement; namely, when it is expressed in the gift to be so made, or is charged in writing by the intestate as such, or is acknowledged in writing as such by the child or other descendant to whom it is made. The appellant seeks to establish the advancements claimed in this case, under the last named mode only; and the agreement of March 11, 1861, is offered as an acknowledgment in writing which satisfies the requirements of the Gen. Sts. *c.* 91, § 8.* The parties to this instrument are the three children of the intestate, and the daughter's husband. It is wholly an agreement between themselves. The intestate was not a party to it, nor does it purport to be a receipt or voucher to him. It is an agreement for an equitable division of the estate, in view of the fact that one of them had received more than the others from their father in his lifetime. It does not appear that the intestate ever had knowledge of it, or in any way approved the

* " All gifts and grants shall be deemed to have been made in advancement, if they are expressed in the gift or grant to be so made, or if charged in writing by the intestate as an advancement, or acknowledged in writing as such by the child or other descendant."

arrangement. It is not an agreement or arrangement among the heirs, made with the concurrence or approbation of the administrator, as a basis upon which his accounts in the probate court should be rendered, and the estate distributed. It was made during the lifetime of the father, and only looks to future action in the settlement of the estate. There is no statement that the money and property received were received as advancements. At most, it is but a contract that they shall be so treated. Whatever rights this may give the parties among themselves, it is not enough to establish an advancement under the statute.

An advancement must be the intelligent act of the intestate. Whether money or personal property, delivered by him to his children, is to be treated as a loan or sale, or a gift, or an advancement, depends upon his intention, manifested in a legal way. No agreement to which he is not a party can effect such a result. The intent of the giver, not that of the receiver, is to govern. *Barton* v. *Rice*, 22 Pick. 508. *Hartwell* v. *Rice*, 1 Gray, 587. *Bigelow* v. *Poole*, 10 Gray, 104.

In the result to which we come, the declarations of the intestate and Mrs. Frye, which were offered, were immaterial, and need not be considered. They were not offered to show that the testator recognized and approved the agreement as an acknowledgment. *Decree affirmed.*

